[No. 697.]

## THE STATE OF NEVADA, RESPONDENT, *v.* JOHN DONOVAN, APPELLANT.

ENTIRE CHARGE MUST BE CONSIDERED.—Where, from the entire charge of the court, it clearly appears that the jury could not have been misled by the language objected to, the judgment will not be disturbed.

CHARGE OF THE COURT ON EVIDENCE.—On a trial for murder, if there is no evidence tending to establish the crime of manslaughter, the court may so inform the jury, and charge them not to consider the question.

APPEAL from the District Court of the Eighth Judicial District, White Pine County.

The defendant, having been convicted of the crime of murder in the second degree, was sentenced to confinement at hard labor in the State prison for the term of his natural life.

He appealed from the judgment.

In addition to the instructions copied in the opinion, the court gave the following, as asked by defendant's attorney, viz.: "Ninth. If the jury believe from the evidence that the defendant had drawn his pistol on the deceased with intent at the time to use the same, but did not use it, and repented of the act, and put his pistol away, in good faith, with the intention of not using it, and that subsequently the said pistol accidentally fell from the person of the defendant and was accidentally discharged, the jury should acquit.

"Tenth. If there is a conflict of evidence in this case, and such conflict can be reconciled consistent with the defendant's innocence, it is the duty of the jury to thus reconcile it, and acquit."

The court charged the jury: "In this case, as there is absolutely no evidence of any kind tending in the slightest

degree to show that the defendant received any provocation from any person, at or about the time McWilliams is said to have been shot, the jury will not have the occasion to consider whether the defendant is guilty of manslaughter."

The facts are sufficiently stated in the opinion.

*Robert M. Clarke,* for Appellant.

I. The charge of the court contains an erroneous definition of murder in the second degree. The jury are explicitly told that to find the defendant guilty of murder in the second degree, they need not find that the killing of McWilliams was done with "willfulness," or "deliberation," or "premeditation." Now, since in this case there was no question of provocation, or justification, or irresistible passion—since there was no pretense that the killing happened in the commission of an unlawful act, which in its consequences naturally tended to destroy the life of a human being, or that the homicide was committed in the prosecution of a felonious intent; since, indeed, the whole question was whether the killing was unintentional, and therefore excusable, or intentional, and therefore felonious—it became of the utmost importance that the jury should have a correct definition of murder, and that such definition should be given with exact reference to the facts of the case.

The State affirmed that the killing was intentional and without provocation, and was therefore murder. The defendant maintained that the killing was unintentional, and did not happen in the commission of an unlawful act, and therefore it was excusable. Consequently, when the court charged the jury that "murder which is wanting in any of these ingredients of willfulness, deliberation or premeditation, is murder in the second degree," it denied the defense of excusable homicide upon which the defendant relied, and substantially declared to the jury that if they believed the killing to have been unintentional, nevertheless they must find the defendant guilty of murder in the second degree.

II. Murder in the second degree is not less or other than murder. "The legislature did not attempt to define murder

anew, but only to draw certain lines of distinction by which it might be told in a particular case whether the crime was of such a cruel and aggravated character as to deserve the extreme penalty of the law, or of a less aggravated character, deserving a less severe punishment." (*People* v. *Sloan,* 44 Cal. 96–98.)

Murder, whether of the first or second degree, is still defined to be "the unlawful killing of a human being with malice aforethought." (Crim. Pr. Act, Sec. 15; Bish. C. L., Vol. 1, Sec. 797; Bish. C. L., Vol. 2, Secs. 723, 726, 727, 728.)

*John R. Kittrell, Attorney-General,* for Respondent.

The court did not err in its charge to the jury in defining the acts which amount to murder in the first degree. (Stat. 1861, Sec. 17, p. 58; *Commonwealth* v. *Green,* 1 Ashmead (Penn.) 296–300; *Commonwealth* v. *Murray,* 2 Id. 43; *Commonwealth* v. *Keeper of the Prison,* Id. 231; *People* v. *Moore,* 8 Cal. 90; *People* v. *Bealoba,* 17 Cal. 393; *People* v. *Sanchez,* 24 Cal. 28; *People* v. *Foren,* 25 Cal. 362; *People* v. *Nichol,* 34 Cal. 211.)

By the Court, HAWLEY, C. J.:

Appellant Donovan, having been convicted of murder in the second degree, complains of the following language in the court's charge to the jury: "All murder perpetrated by means of any kind of willful, deliberate and premeditated killing is murder in the first degree; murder which is wanting in any of these ingredients of willfulness, deliberation or premeditation is murder of the second degree." * * * "The distinction between the two grades of murder has been above stated. Murder that is willful, deliberate and premeditated is murder of the first degree. If it is not willful, deliberate and premeditated it is murder in the second degree."

Appellant argues, that inasmuch as there was no testimony tending to show any provocation, irresistible passion

or justification, or that the killing happened in the commission of an unlawful act, or in the prosecution of a felony, that the language objected to, while it might be correct as a general proposition, was not applicable to this exceptional case, and that it had the effect to deprive appellant of his defense, in this, that the language could be so interpreted as to mean that, although the jury might believe the killing to have been unintentional, they must, nevertheless, find appellant guilty of murder in the second degree.

Without entering into any discussion whether the language quoted would bear the interpretation given to it by counsel, if considered by itself, we think a complete answer to the objection urged is found in the fact, that upon an examination of the entire charge it becomes apparent that the jury did not so understand it.

From the testimony, it appears that McWilliams (the deceased) was shot through the head in a public saloon. But one shot was fired. Appellant claimed, that in an attempt to adjust his clothing the pistol dropped to the floor, and was there discharged. The theory of his defense was that the killing was accidental. The State contended that the fatal shot was intentionally fired by appellant. There is testimony in the record tending to prove both positions. The jury, being the sole judges of the credit to be given to the witnesses, would have been justified in finding either to be true. If the theory of appellant was correct he was not guilty of any offense. If, on the other hand, the theory of the prosecution was true, appellant was guilty of murder. The court properly withdrew from the deliberations of the jury the question whether or not appellant was guilty of manslaughter, as there was no evidence that would warrant its consideration.

"The question for the jury," said the court, "will be whether or not Donovan did voluntarily or intentionally shoot McWilliams and kill him. * * * If the jury should conclude that he did intentionally shoot and kill McWilliams, * * * as there is no evidence of any sort

tending to show either justification or mitigation, they must conclude that the defendant is guilty of murder, and the only other further question will be whether it was murder in the first, or murder in the second degree."

Before the jury were called upon to consider whether it was murder in the first or second degree, they must have determined the fact in favor of the State, that appellant had intentionally shot at and killed the deceased.

The court gave the following instructions asked by appellant's counsel, viz.: "Second. In this case at bar, the prosecution must prove beyond a reasonable doubt that the defendant fired the fatal shot; and if there is a reasonable doubt founded upon the evidence as to whether the defendant intentionally fired the fatal shot, or that the same was accidental, and not intentional, it is the duty of the jury to give the benefit of that doubt to the defendant and acquit." "Third. If the jury believe, from the evidence, that the fatal shot was fired from the pistol while it was not in the hands or under the control of the defendant, it is the duty of the jury to acquit."

Is there any possibility that a jury composed of sensible men could have been misled upon this point? We think not. The duty of the jury was plainly defined. If they believed the pistol was accidentally discharged they should acquit. If they believed that the fatal shot was intentionally fired by appellant, they should find him guilty of murder, and determine the degree.

There is no pretense but what the crime of murder was correctly defined, and if, in the judgment of the jury, the offense committed by Donovan was not of such a cruel and aggravated character as to come within the definition of murder in the first degree, it was nevertheless murder, and it was the duty of the jury to find him—as they did—guilty of murder in the second degree.

The judgment of the district court is affirmed.